over which the court had jurisdiction, and for a breach of it the libel is brought. The refusal to permit the discharge of the cargo according to the usage of the place, was as much a breach of the contract as would have been a refusal to pay the freight, or to accept the cargo at all, where the bill of lading provided for acceptance.

I must, therefore, reverse the decree below, and, unless the parties agree upon the damages for the seven days' detention, a reference must be made to the clerk, to ascertain them, in conformity with this opinion, without costs on either side.

---

## Case No. 6,470.

HIGGINS et al. v. WATSON et al.

[43 Hunt, Mer. Mag. 69.]

District Court, S. D. New York. 1860.

FREIGHT—LOSS OF CARGO—CHARTER-PARTY.

[1. The vessel owner is not liable for the loss by sea perils of goods laden on deck with the shipper's consent, in the absence of culpable neglect or misconduct in their destruction or jettison.]

[2. As between the charterer and the owner, the charter-party, and not the bills of lading, controls the contract of shipment, and governs the rights of the parties, where their terms are conflicting.]

[This was a libel by N. Foster Higgins and others against Barron C. Watson and others for freight under a charter-party.]

The libellants were the owners of the schooner B. S. Johnson, which was chartered on August 6, 1858, to the respondents by her master, for a voyage from two ports in North Carolina to New York, the respondents engaging to provide the vessel with a full cargo of resin and spirits of turpentine in barrels under deck, and with a deck load of resin in barrels, and to pay the master or agent a certain freight for resin and spirits of turpentine under deck, and another rate of freight for resin on deck. The master signed two clean bills of lading for resin shipped on board, and one deliverable to the respondents or their assigns, and the other deliverable to a third party. The vessel arrived in New York, September 24, 1858, and delivered to the respondents 106 barrels of resin less than the number of barrels called for by the bills of lading, that number having been swept from the deck or jettisoned by reason of sea perils. The master duly assigned the charter-party to the libellants, who brought this action to recover the freight according to the charter, while the respondents claimed that as the bills of lading were clean bills, the libellants were responsible for the loss of the resin shipped on deck.

Before BETTS, District Judge.

HELD BY THE COURT: That the owner of a vessel is not liable for the loss by sea perils of goods laden on deck with the consent of the shipper, when no culpable neglect or misconduct is attributed to him in their destruction or jettison. [Lawrence v. Minturn] 17 How. [58 U. S.] 100. That the charter-party in this case, and not the bills of lading, forms the controlling contract of shipment, and governs the rights of the parties, which are not changed by specifying a different rate of freight in the bills of lading. That the objection that an action upon a charter-party is not within the jurisdiction of the court, cannot be maintained. Decree for libelants, with a reference to ascertain the amount of the charter-money due.

---

HIGGINS (WEBSTER LOOM CO. v.). See Cases Nos. 17,341 and 17,342.

HIGGINS, The RICHARD R. See Case No. 11,768.

---

## Case No. 6,471.

HIGGINSON'S CASE.

[1 Cranch, C. C. 73.] [1]

Circuit Court, District of Columbia. March Term, 1802.

WITNESS—SURETY FOR APPEARANCE — COMPENSATION DURING IMPRISONMENT.

A witness, who for want of surety to appear and testify, has been imprisoned, is entitled to the daily compensation for the time of imprisonment.

[Cited in Robinson v. Chambers, 94 Mich. 473, 54 N. W. 176.]

Eleanor Higginson had been ordered by a justice of the peace to recognize with surety in a small sum, to appear and testify as a witness against Daniel Hennissee, on a charge of felony; but being a stranger and unable to get surety, she had been committed to prison and detained until the trial.

Mr. Mason, for the United States, moved that she should be allowed payment for her attendance during the whole time she was so detained. The act of 1753, c. 13, only provides for the payment of the prison fees, and makes no allowance for the time of the witness.

THE COURT allowed the witness to prove her attendance, and ordered her to be paid for the whole time she was detained, it being her misfortune and not her fault that she could not obtain security for her appearance.

---

HIGGINSON (CREMER v.). See Case No. 3,383.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]